Kevin M. CHAPMAN, Adm. of Estate of
James E. Chapman, Plaintiff-Appellant,

v.

James L. SANDERS et al.,
Defendants-Respondents.

No. 36153.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 29, 1975.

Motion for Rehearing or Transfer
Denied Sept. 8, 1975.

Application to Transfer Denied
Nov. 10, 1975.

Kappel, Neill, Staed & Wolff, St. Louis, for plaintiff-appellant.

Jack L. Koehr, City Counselor, Eugene P. Freeman, Assoc. City Counselor, St. Louis, for defendants-respondents.

WEIER, Presiding Judge.

This case arises on appeal from a judgment by the Circuit Court of St. Louis, affirming a decision of the Board of Trustees of The Alternate Police Retirement System of St. Louis, which denied plaintiff's application for accidental disability retirement (§ 86.263, RSMo. 1969). We find the circuit court's judgment free of error.

Plaintiff, James E. Chapman,[1] was a member of the St. Louis Police Department from 1932 until 1971. During his thirty-eight and one-half years of service, the plaintiff incurred back and neck injuries of varying degrees of severity. The injuries stemmed from a myriad of incidents, including on and off duty automobile accidents and falls suffered in the performance of police duties. In February of 1970, surgery was performed in an effort to correct plaintiff's disabling physical condition of osteoarthritis, which, in the opinion of his doctors, had been aggravated by plaintiff's many accidents throughout the years. The operation, however, left the plaintiff extensively paralyzed, described as acute quadriplegia.

Plaintiff applied for accidental disability retirement on March 11, 1971. While the accidental disability application was still pending, plaintiff applied for and was

---

1. Due to the death of James E. Chapman on February 25, 1975, while this action was pending, Kevin M. Chapman, as administrator of James E. Chapman's estate was substituted as plaintiff pursuant to Rule 52.-12(c).

granted regular service retirement on June 1, 1971.[2] On April 21, 1972 a hearing on the accidental disability application was held in which the plaintiff testified and the parties stipulated to the introduction of his entire medical history by documentary evidence. Also included by stipulation were official police reports of eight instances of accidents involving injuries to the plaintiff, the first occurring in 1940 and the most recent injury taking place in 1967. The doctors who examined the plaintiff agreed his numerous injuries aggravated his osteoarthritis to the disabling stage. The Board determined that none of the accidents subsequent to 1955 could have medically resulted in plaintiff's total and permanent incapacity, and thus plaintiff's application for service connected accidental disability retirement was filed beyond the permissible time under § 86.263, RSMo. 1969. Plaintiff petitioned the circuit court for a review of the Board's decision. On this review he suffered an adverse judgment.

Although the circuit court upheld the Board's decision in denying plaintiff's application, the court arrived at the same result for different reasons. The court found plaintiff's disabling condition was brought about as a result of his many traumatic episodes over an extended period of time aggravating the underlying condition of arthritis. The court construed the term "accident", as used in § 86.263, as not including a series of "many traumatic events", thus not extending the section's coverage to the plaintiff.

■ Plaintiff asserts this variance between the Board's basis for decision and that of the court's constitutes error. We disagree. It may be said without question that the scope of judicial review of decisions of administrative agencies is generally limited to a determination of whether the decision is supported by "competent and substantial evidence upon the whole record".

§ 536.140(2), RSMo. 1969. However, if there is no factual question involved, but rather a question of law or application of the law to the facts, the court may proceed to determine the matter by applying the law in light of the facts. *Stephen & Stephen Properties, Inc. v. State Tax Commission*, 499 S.W.2d 798, 802[1] (Mo.1973).

■ Since there is no dispute on the occurrences of the duty-connected accidents themselves, nor on the medical evidence relating to plaintiff's need for the surgery and his total incapacitating physical condition subsequent to the 1970 operation, the only issue on this appeal is whether the circuit court correctly interpreted the applicable statute. § 86.263 provides:

"Upon application by the member or the board of police commissioners any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part, and if such accident occurred not more than five years prior to date of application unless the accident was reported and an examination made of the member by the medical staff of the board of police commissioners within five years of the date of the accident with subsequent examinations made as requested, shall be retired by the board of trustees provided that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired; provided that if the accident occurred prior to the age and year set out in section 86.250, application for benefits must be made before such date except that the interval between date of accident and of application may be at least six months."

2. The service retirement allowance granted plaintiff was $886.48 per month. The accidental disability allowance, if granted, would amount to $941.72 monthly in addition to payment for continuing service connected medical expenses. The regular service retirement does not include any direct medical benefits.

Essentially the section can be broken into five necessary elements that must be demonstrated before one is entitled to service connected accidental disability benefits: (1) a total and permanent incapacitation for duty caused by an accident, (2) the disabling accident occurred in the actual performance of duty, (3) the accident occurred at some definite time and place without contributory negligence, (4) the accident occurred within the five years prior to the application for benefits, and (5) the application was filed prior to the applicant's reaching retirement age according to § 86.250 if the accident occurred prior to retirement age.

■ Whether or not the plaintiff met the statutory requisites thus turns on the meaning of the term "accident". Plaintiff contends it should be construed broadly to include many accidents acting cumulatively as a process rather than a single event. Plaintiff's brief cites several authorities for such an expansive interpretation, but all arose either in a different context or under a different statute.

■ Admittedly there is little Missouri authority upon which to base an interpretation of "accident" as used in this particular statute. However, we must consider the entire statute with all of its sections in *pari materia* and in light of the objects and purposes of the legislature. *In re Estate of Hough*, 457 S.W.2d 687, 691[10] (Mo.1970); *Becker v. St. Francois County*, 421 S.W.2d 779, 783[10] (Mo.1967).

■ The "Alternate Retirement System in Cities of 700,000 or More" (§§ 86.-200–86.363, RSMo 1969), read in its entirety, demonstrates the legislative intent to establish retirement security for policemen. But in addition, it specifically confined the awards to those individuals meeting the proscribed requirements of number of years of service and age. The retirement scheme devised by the legislature also differentiates between types of retirement available;

normal service retirement, § 86.250; retirement disability (which does not need to be service connected), § 86.257; and service connected accidental disability retirement, § 86.263. Such a comprehensive scheme of coverage demonstrates the reasonableness of an inference that the legislative intent was that each element of § 86.263 should be precisely met before an individual is eligible for that particular type of retirement.

■ Plaintiff, however, urges that pension statutes are to be liberally construed, and thus contends a narrow definition of "accident" would be unjust. The rule of liberal construction only operates to resolve an ambiguity within a statute and not to create one. *State ex rel. Sei v. Haid*, 332 Mo. 1061, 61 S.W.2d 950, 954[5] (1933). When the language of the statute is unambiguous and conveys a plain and definite meaning, "the courts have no business foraging among such rules to look for or impose another meaning." *DePoortere v. Commercial Credit Corporation*, 500 S.W.2d 724, 727[1, 2] (Mo.App.1973); *Consolidated School District No. 1 of Jackson County v. Bond*, 500 S.W.2d 18, 21[1, 3] (Mo.App.1973).

■ The very wording of § 86.263 indicates a narrow definition was intended,— "an accident * * * at some definite time and place * * *." To illuminate by way of contrast, the firemen's accidental disability pension statute has been amended, deleting this restrictive phrase, "at some definite time and place", to allow an expanded coverage of the term "accident". See: *McCarthy v. Board of Trustees of the Firemen's Retirement System of St. Louis*, 462 S.W.2d 827, 830 (Mo.App.1970); § 87.-200, RSMo. 1969 (Historical Note V.A.M.S.). The fact that the legislature did not similarly change the policemen's pension statute is persuasive here with respect to the legislature's intent.

The circuit court's narrow construction of the term "accident", though operating to exclude plaintiff from coming within the

purview of § 86.263, is the logical and correct one.

The judgment is affirmed.

SMITH, C. J., and RENDLEN, J., concur.